No. 15-2061

UNTED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
_____

UNITED STATES OF AMERICA.
*Appellee,*

V.

DAVID ALCANTARA
*Defendant-Appellant*
_____

Appeal from the United States District Court for the
District of Rhode Island
_____

REPLY BRIEF OF DEFENDANT-APPELLANT,
DAVID ALCANTARA
_____

   MOLLY KAPSTEIN COTE
THE LAW OFFICES OF MOLLY KAPSTEIN COTE
The Old Almy Village
1016 East Main Road, Suite 3D
Portsmouth, RI 02871
(401) 682-1800

Attorney for the Appellant

August 12, 2016

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................3

I. INTRODUCTION..............................................................................................4

II. PHOTOGRAPHS OF ALLEGED COUNTERFEIT CURRENCY LACKED FOUNDATION, MISLEAD THE JURY AND CAUSED THEM TO DRAW IMPROPER INFERENCES....................................................................................4

III. TESTIMONY OF AGENT MITCHELL LACKED FOUNDATION, WAS NOT RELEVANT AND MISLEAD THE JURY.....................................................6

IV. TESTIMONY ABOUT MR. ALCANTARA'S ARREST AT JOHN F. KENNEDY INTERNATIONAL AIRPORT CAUSED THE JURY TO SPECULATE AND CONSIDER IMPROPER EVIDENCE OF APPELLANT'S CONSCIOUSNESS OF GUILT.....................................................7

V. THE PROSECUTOR VIOLATED MR. ALCANTARA'S DUE PROCESS RIGHTS BY MAKING IMPROPER STATEMENTS TO THE JURY DURING THE GOVERNMENT'S CLOSING ARGUMENT............................................11

CONCLUSION....................................................................................................16

CERTIFICATE OF COMPLIANCE...................................................................17

CERTIFICATE OF SERVICE.............................................................................17

# TABLE OF AUTHORITIES
## Cases

*United States v. Benedetti*, 433 F.3d 111 (1st Cir. 2005).......................7, 8, 9

*United States v. Candelaria-Silva*, 162 F.3d 698 (1st Cir. 1998).................10

*United States v. Carpenter*, 494 F.3d 13 (1st Cir. 2007)...................11, 13, 15

*United States v. DeSimone*, 699 F.3d 113 (1st Cir. 2012)............................9

*United States v. Fernandez-Hernandez*, 652 F.3d 56 (1st Cir. 2011)............9

*United States v. Gonzalez-Perez*, 778 F.3d 3, 19 (1st Cir. 2015).................16

*United States v. Grandmont*, 680 F.2d 867 (1st Cir. 1982).........................10

*United States v. Hernandez-Bermudez*, 857 F.2d 50 (1st Cir. 1988)..............7

*United States v. Otero-Mendez*, 273 F.3d 46 (1st Cir. 2001).....................8, 9

*United States v. Tracy*, 989 F.2d 1279 (1st Cir. 1993).................................10

*United States v. Vasquez-Larrauri*, 778 F.3d 276, 286 (1st Cir. 2015).........12

*United States v. Wallace*, 461 F.3d 15 (1st Cir. 2006)...............................7, 9

*United States v. Zanghi*, 189 F.3d 71 (1st Cir. 1999).................................8, 9

## United States Constitution, Statutes & Rules

United States Constitution, Amend. V...................................................*Passim*

Fed. R. of Evid. 401..........................................................................................5

Fed. R. of Evid. 403........................................................................................10

## I. INTRODUCTION

This reply brief addresses certain arguments advanced by the government. Mr. Alcantara does not waive any arguments in his brief in chief.

## II. PHOTOGRAPHS OF ALLEGED COUNTERFEIT CURRENCY LACKED FOUNDATION, MISLEAD THE JURY AND CAUSED THEM TO DRAW IMPROPER INFERENCES

The government contends that the photographs introduced at trial, (Exhibit 100 and 158), depicting Mr. Alcantara's brother, Urias, beside a large pile of alleged counterfeit bills, as well as a photograph of Mr. Alcantara beside a large pile of alleged counterfeit bills, (I:249, 330, 333; II:158, 196, 261; III:183, 311; Add.: 4, 7; GA: 1-4),[1] were relevant because 1) the Connecticut Mall incident was listed in the Indictment as an overt act in the counterfeit currency conspiracy; 2) in addition to these photographs, there was other overwhelming evidence that connected Urias to the incident in Connecticut; and 3) the photographs were found in defendant's phone and were very similar to the pictures of Mr. Alcantara in this regard. (Br.: 20-22).[2]

Even assuming this is accurate, which Mr. Alcantara does not concede, these photographs remain wholly irrelevant in that nothing in the evidence established that the currency in the pictures was in fact counterfeit and more critically, there was nothing that established when or where the pictures were taken. Thus, the

---

[1] The three-volume Appendix is cited as "I:__, II:__ & III:__." The government's Addendum is cited as "GA:__."

[2] The government's Brief is cited as "Br.:__."

4

government did not satisfy even the bare minimum requirements of relevancy, in accordance with Rule 401 of the Federal Rules of Evidence, in connecting this evidence to the crimes alleged in this case.

The same analysis should be applied to the pictures of Mr. Alcantara beside a pile of alleged counterfeit currency as well as a picture of a large pile of alleged counterfeit bills absent any person in the photograph. (Br.: 33; GA: 2-3, 5). Again, the government failed to establish any relevance or connection in time or place to the allegations in this case. Thus, due to its utter irrelevance and undue prejudice to Appellant, this evidence should have been stricken from the record despite defense counsel's failure to make an objection later in the trial when it became clear the government failed to establish the relevance of these photographs.

The District Court committed reversible error when it permitted the government to introduce this irrelevant and unduly prejudicial evidence which caused the jury to speculate and reach an erroneous verdict against Mr. Alcantara based on evidence that, at best, amounted to nothing more than improper guilt by association evidence, and at worst, was wholly irrelevant. The erroneous admission of this evidence resulted in a denial Mr. Alcantara's due process right to a fair trial pursuant to the Fifth Amendment of the United States Constitution.

### III. TESTIMONY OF AGENT MITCHELL LACKED FOUNDATION, WAS NOT RELEVANT AND MISLEAD THE JURY.

The government claims that the testimony of Agent Mitchell pertaining to the status of the bills in this case as counterfeit was not based on speculation and that it was in fact, readily apparent that they (the bills) were fake. (Br.: 27-28) (parentheses added). However, in a footnote to this section of its brief, the government highlights one of the most critical issues in this regard. That is, the pictures of the bills admitted in evidence were not the same pictures the witness relied upon in reaching his conclusion that the bills were fake. *Id.*

Agent Mitchell testified that the photographs he relied upon in reaching his conclusion were in fact clearer versions of the images: "[t]he images we used in court were not as good as the digital images that I actually viewed..." (II:301). Without viewing the same images that the witness viewed, the jury was at a total loss in assessing the agent's testimony and conclusion in this regard. The jury could not possibly accurately assign value to the weight of this evidence since they did not have the opportunity to review the actual evidence itself. Any conclusions they reached in this regard could only be based on speculation about what the agent actually reviewed.

Admission of this evidence resulted in a denial of Mr. Alcantara's Fifth Amendment right to a fair trial in that it caused the jury to speculate and render a

6

verdict based, at least in part, on testimony that lacked foundation and should not have been submitted to the jury.

## IV. TESTIMONY ABOUT MR. ALCANTARA'S ARREST AT JOHN F. KENNEDY INTERNATIONAL AIRPORT CAUSED THE JURY TO SPECULATE AND CONSIDER IMPROPER EVIDENCE OF APPELLANT'S CONSCIOUSNESS OF GUILT

The government asserts that evidence of Mr. Alcantara's arrest at John F. Kennedy International Airport, ("JFK"), in New York was rightfully admitted as it was evidence that provided a context for the seizure of Appellant's cell phones and was probative of his consciousness of guilt. (Br.: 28). In this regard, the government cites several cases to support its assertion. (Br.: 30). However, the facts of this case are clearly distinguishable from the facts of each case cited by the government.

The case law pertaining to evidence of flight as proof of consciousness of guilt is well-settled:

> This Court "...has previously noted that "[f]light evidence is controversial and must be handled with care." *United States v. Benedetti,* 433 F.3d 111, 116 (1st Cir. 2005); *see also United States v. Hernandez-Bermudez,* 857 F.2d 50, 54 (1st Cir. 1988) ("We urge ... that courts exercise caution in admitting this type of evidence.... [A]t least in many cases, [flight] evidence is only marginally probative as to the ultimate issue of guilt or innocence." (internal quotation marks and citations omitted)). The specific facts of this case, where a pending prior felony charge could explain the defendant's actions, illustrate the need for caution in the use of consciousness-of-guilt evidence." *United States v. Wallace,* 461 F.3d 15, 25-26 (1st Cir. 2006).

7

Further, "As a precursor to admissibility, the government must present sufficient extrinsic evidence of guilt to support an inference that a defendant's flight was not merely an episode of normal travel but, rather, the product of a guilty conscience related to the crime alleged. *See United States v. Otero-Mendez*, 273 F. 3d 46, 53 (1st Cir. 2001); *Zanghi*, 189 F.3d 71, 83 (1st Cir. 1999). "Because flight may be consistent with innocence as easily as with guilt, this precursor helps ensure that a jury does not infer guilt based solely on a defendant's meanderings." *Benedetti,* 433 F.3d at 116.

In this case, the government failed to establish that Mr. Alcantara's travel plans were the product of a guilty conscience related to the crimes alleged. The government points merely to the arrest of Mr. Alcantara's brother the month prior to his own arrest at the airport in New York, along with evidence that, again, the month prior to his arrest, Mr. Alcantara discussed a need to get rid of the remaining counterfeit currency and the fact that he became aware of the Secret Service investigation nearly two weeks before he was detained at JFK. These facts alone, in the light of the case law in this regard, do not rise to the level of establishing the precursor for admissibility for flight evidence. This evidence, at best, was marginally relevant because there was simply not enough evidence to adequately connect Mr. Alcantara's travel plans to his consciousness of guilt of these allegations.

In each case cited by the government, the evidence that supported admissibility of flight evidence included either evidence of a defendant's use of false identification, flight that was closer in time to the crimes charged or some admission by the defendant that his efforts were an attempt to evade capture. It is important to note that similar facts do not exist here. *See United States v. DeSimone*, 699 F.3d 113, 125-126 (1st Cir. 2012)(defendant escaped from custody and admitted that attempt); *United States v. Fernandez-Hernandez*, 652 F.3d 56, 70 (1st Cir. 2011)(defendant admitted using a false driver's license and social security card to assume a false identity while a fugitive from justice); *United States v. Wallace*, 461 F.3d 15, 25-26)(defendant admitted using a fake ID in an effort to evade capture for a murder charge that was separate from the Federal charge at issue in that case); *United States v. Benedetti*, 433 F.3d 111, 116-118 (1st Cir. 2005) (defendant was not apprehended for four years after he failed to self-surrender at his lawyer's request); *United States v. Otero-Mendez*, 273 F.3d 46, 53-54 (1st Cir. 2001)(defendant gave a statement explaining that his flight and use of a disguise during that flight was an attempt to avoid connection to the allegations); *United States v. Zanghi*, 189 F.3d 71, 83-84 (1st Cir. 1999)(defendant's landlord testified at trial that defendant called him from Spain, explaining that "he had to leave unexpectedly and was not going to be able to honor the lease" because he had "problems" in the United States" and that "the United States had "no extradition treaty with Spain" and that "it would be a safe haven for a period of time and that

9

there were a lot of people from all over the world there that could not be extradited."); *United States v. Candelaria-Silva*, 162 F.3d 698, 705-706 (1st Cir. 1998)(defendant admitted using a false ID and renting an apartment and applying for a credit card under that assumed name to avoid capture for a probation violation); *United States v. Tracy*, 989 F.2d 1279, 1285 (1st Cir. 1993)(defendant failed to appear for trial in Florida and attempted to conceal his identity upon arrest); *United States v. Grandmont*, 680 F.2d 867, 869-870 (1st Cir. 1982) (defendant told accomplice he would not appear (at court) and would leave after obtaining new identification). Clearly, the facts and evidence that the government relies upon to support admission of the evidence relating to Mr. Alcantara's arrest in New York, are not on par with the facts in the cases which the government cites as it relates to evidence of flight.

The government also asserts that this evidence is relevant because it provided context to the seizure of Mr. Alcantara's cell phones. (Br.: 28). While there maybe some relevancy to the evidence in this regard, the probative value is clearly outweighed by the undue prejudice to Appellant. *See Fed. R. of Evid. 403* . The government could have illicited evidence pertaining to the seizure of Mr. Alcantara's cell phones without referencing his presence at JKF or any plans to leave the jurisdiction.

The government's attempts to tie this evidence to any consciousness of guilt by Mr. Alcantara is simply too tenuous and does not satisfy the precursor to

admissibility articulated by the controlling case law. Thus, evidence of Mr. Alcantara's arrest at JFK caused the jury to improperly speculate about why Mr. Alcantara would be traveling and implied a guilty conscious where the government provided no factual basis for such an assumption. This evidence added to the highly prejudicial impact of the evidence as a whole, resulting in a denial of Mr. Alcantara's right to a fair trial in violation of the Fifth Amendment of the United States Constitution.

## V. THE PROSECUTOR VIOLATED MR. ALCANTARA'S DUE PROCESS RIGHTS BY MAKING IMPROPER STATEMENTS TO THE JURY DURING THE GOVERNMENT'S CLOSING ARGUMENT.

As set forth in his brief, Mr. Alcantara asserts that the prosecutor's reference to the other co-conspirators during her closing argument, was improper and a violation of Mr. Alcantara's due process rights in that it caused the jury to speculate, posed a threat of unfair prejudice, and "so poisoned the well that a new trial is required." *United States v. Carpenter*, 494 F.3d 13, 23 (1st Cir. 2007).

The government responded to Mr. Alcantara's claim in this regard, stating it was "waived and meritless" because counsel failed to avail his client of three separate means of attempting to cure any prejudice resulting from the prosecutor's comments, including an objection, a motion for mistrial or a curative instruction to the jury. (Br.: 34-39). The government further claims there was no error here because the statements were "brief and benign." (Br.: 41).

11

The government's argument here fails because it neglects to address whether the prosecutor's comments so poisoned the well as to require a new trial. Although it is rarely possible to know exactly how a jury reaches its verdict, the analysis suggested by the case law in this regard seems to be impact or result-based. In other words, the focus should not be on the failings of defense counsel to attempt to cure the prejudice, but rather on the probable impact of the prosecutor's statements on the jury's deliberations and analysis.

Here, there can be no question that when the prosecutor referenced the co-conspirators in the context of whether or not they would also be held accountable for their part in these allegations, by saying "[t]hat's for another day. That's for another jury. This jury is tasked with deciding what this member of the conspiracy did, what this defendant did." (II:363), she called upon the jury to consider things not properly before them.

The government cites the holding of this Court that it will not "likely infer" that a prosecutor intended ambiguous remarks to have their most "damaging meaning..." *See United States v. Vasquez-Larrauri*, 778 F.3d 276, 286 (1st Cir. 2015). (Br.: 40). However, there is no other way to interpret what happened in this case. The prosecutor's statement, no doubt, caused the jury to speculate that other individuals were involved in the incident for which Mr. Alcantara was being tried, and provided false affirmation to the jury that other individuals were in fact charged for the crimes, in addition to Mr. Alcantara. This statement directed the

12

jury to speculate that: 1) Mr. Alcantara must be guilty if the government located other individuals involved in the incident, attributing more legitimacy to the existence of a conspiracy; 2) caused the jury to speculate that they must find Mr. Alcantara guilty because the other individuals mentioned may be acquitted and someone should be held responsible for the crimes; 3) caused the jury to speculate that they must find Mr. Alcantara guilty because others maybe found guilty as well, and it would not be fair for them to be held accountable and not Mr. Alcantara.

No matter which way the jury interpreted the prosecutor's statements, those statements called upon the jury to speculate about things that were not before them in this case. Mr. Alcantara was the only individual on trial in this case, and the jury's only obligation was to consider the facts set forth against him. The prosecutor's improper reference to other individuals, implying dual culpability and responsibility, caused the jury to wrongly speculate, which undoubtedly had a prejudicial effect on the jury's assessment of the facts.

Similar to the Court's reasoning in *Carpenter,* where the prosecutor made provocative closing remarks about the defendant's gambling habits which distracted the jury from the elements of the crime, the jury here was distracted from the facts and elements of the crime for which Mr. Alcantara was charged because they were forced to consider alleged "co-conspirators" that, according to the prosecutors statements, would inherently be tried and punished. *See Carpenter*, 494 F.3d 13, at 22. In *Carpenter*, however, the references to gambling

pertained to the defendant's own actions and this Court concluded that the statements impeded the jury's ability to assess the facts and law. Therefore, the prosecutor's statements in Mr. Alcantara's case about *other* individuals' actions are certainly improper.

This Court also assesses improper language for alternative means of description, and here the prosecutor did not even have to make this statement. Alluding to other individuals' potential culpability in the alleged crimes, caused the jury to speculate about punishment and consider "defendants" in other cases. This is clearly beyond the scope of the jury's duty. This statement had nothing to do with the facts before the jury in Mr. Alcantara's case and only served to prejudice Mr. Alcantara and cause the jury to speculate, thus poisoning the well with impermissible comments.

Despite the trial court's instructions that lawyer's statements are not evidence, as well as defense counsel's missed opportunity to attempt to cure the prejudice resulting from the comments, the comments were made and they could not be unheard by the jury. While defense counsel did indeed have three possible remedies available to him in this regard, none of these remedies could effectively or realistically cure the prejudice caused by the prosecutor's statements. At this point, faced with a few options to try and correct the prejudice to Appellant, Mr. Alcantara and his lawyer were essentially stuck between a rock and a hard place in that their choice was to either do nothing at all and hope the jury would not

14

speculate as the prosecutor invited them to do or engage in one of the measures suggested by the government, whereby drawing the jury's attention closer to something they should not have heard in the first place. This was no true choice at all. Nothing could remove the comments and their implications from the minds of the jurors.

It is more likely that any follow-up instruction, especially the following day after closing arguments, or time spent at side bar would only draw the jury's attention more to the comments thereby giving them an even more powerful, yet completely improper, effect. At that point in the trial, Mr. Alcantara was best-served by leaving the topic alone. The bell could not be un-rung! It is clear from the verdict that the prosecutor's comments improperly swayed the jury toward conviction.

As a result, Mr. Alcantara's due process rights were denied as [t]he prosecutor's statements were improper given that the statement caused the jury to speculate, posed a threat of unfair prejudice, and "so poisoned the well that a new trial is required." *Carpenter*, 494 F.3d at 24-26. Calling upon the jury to erroneously speculate in this regard and contemplate things far beyond their purview resulted in an altered outcome that led to a miscarriage of justice and an unfair trial in violation of Mr. Alcantara's Due Process Right to a fair trial in violation of his substantive due process rights under the Fifth Amendment of the

United States Constitution. *See United States v. Gonzalez-Perez*, 778 F.3d 3, 19 (1st Cir. 2015).

## **CONCLUSION**

For the foregoing reasons, Mr. Alcantara asks that his requests for relief set forth in his brief should be granted, the judgment of conviction should be reversed, and if not reversed, this matter should be remanded to the District Court for a new trial.

                              Respectfully submitted,
                              DAVID ALCANTARA, APPELLANT
                              Through his attorney,

                              /s/ Molly Kapstein Cote

                              _____
                              MOLLY KAPSTEIN COTE, RI #6608
                              THE LAW OFFICES OF
                              MOLLY KAPSTEIN COTE
                              The Old Almy Village
                              1016 East Main Road, Suite 3D
                              Portsmouth, RI 02871
                              (401) 682-1800

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(B) because it contains 3,731 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(&)(iii).

2. This brief complies with the typeface rule in Fed. R. App. P. 32(a)(5) and the type style rule in Fed. R. App. P. 32(a)(6) because it uses a a proportionally spaced, serif typeface, (*i.e.,* Times New Roman) in 14-point font.

/s/ Molly Kapstein Cote

_____
MOLLY KAPSTEIN COTE, RI #6608
Attorney for Appellant
Dated: August 12, 2016

## CERTIFICATE OF SERVICE

I certify that on August 12, 2016, I electronically served a copy of the forgoing filing on the government, through its attorney, Donald Lockhart, Assistant United States Attorney, a registered participant of the CM/ECF System.

/s/ Molly Kapstein Cote

_____
MOLLY KAPSTEIN COTE, RI #6608
Attorney for Appellant
Dated: August 12, 2016